GARRETT, J.
Following a bench trial, the defendant, Vernon Jackson, was convicted as charged of second degree battery. He was sentenced to 4[1]//2 years at hard labor. He appeals. We affirm the defendant's conviction and sentence.
FACTS
The defendant and the female victim were involved in a romantic relationship. On June 18, 2014, a physical altercation occurred between them, during which the defendant struck the victim in the face. She suffered an orbital blowout fracture and a broken nose. As a result of the injuries sustained in this confrontation, the victim's left eye ruptured and eventually had to be surgically removed and replaced with a prosthetic eye.
The defendant was charged with second degree battery. After he waived his right to a jury trial, he was convicted as charged in a bench trial. A motion for post-verdict judgment of acquittal was denied. The trial court sentenced him to 4½ years at hard labor. A motion to reconsider sentence was denied.
On appeal, the defendant challenges the sufficiency of the evidence and argues that his sentence is excessive.
SUFFICIENCY OF EVIDENCE
Law
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the *767 essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v.Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Sims , 49,682 (La. App. 2 Cir. 2/27/15), 162 So.3d 595, writ denied , 2015-0602 (La. 2/5/16), 186 So.3d 1161. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Sims , supra .
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Stephens , 49,680 (La. App. 2 Cir. 5/20/15), 165 So.3d 1168.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Stephens , supra .
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Bailey , 50,097 (La. App. 2 Cir. 9/30/15), 180 So.3d 442.
A battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. Second degree battery is defined as "a battery when the offender intentionally inflicts serious bodily injury." La. R.S. 14:34.1(A). "Serious bodily injury" is defined as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." La. R.S. 14:34.1(B)(3).
Second degree battery is a specific intent crime and, therefore, the evidence must show that the defendant intended to inflict serious injury. State v. Fuller , 414 So.2d 306 (La. 1982) ; State v. Linnear , 44,830 (La. App. 2 Cir. 12/9/09), 26 So.3d 303. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Linnear , supra . The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of Jackson v. Virginia , supra. State v. Linnear , supra .
In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances; and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Robinson , 37,043 (La. App. 2 Cir. 5/14/03), 848 So.2d 642 ; State v. Williams , 50,004 (La. App. 2 Cir. 9/30/15), 178 So.3d 1051 ;
*768 State v. Glover , 47,311 (La. App. 2 Cir. 10/10/12), 106 So.3d 129, writ denied , 2012-2667 (La. 5/24/13), 116 So.3d 659.
This circuit has repeatedly held that the burden of proving self-defense in a non-homicide case rests with the defendant to prove the defense by a preponderance of the evidence. See State v. Williams , supra ; State v. Jones , 49,396 (La. App. 2 Cir. 11/19/14), 152 So.3d 235, writ denied , 2014-2631 (La. 9/25/15), 178 So.3d 565 ; State v. Glover , supra ; State v. Cheatham , 38,413 (La. App. 2 Cir. 6/23/04), 877 So.2d 164, writ denied , 2004-2224 (La. 6/24/05), 904 So.2d 717 ; State v. Robinson , supra ; State v. Mason , 499 So.2d 551 (La. App. 2 Cir. 1986).
Discussion
The defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he hit the victim, much less that he did so intentionally. Assuming arguendo that he did intentionally hit her in the eye, he also asserts for the first time on appeal that the state failed to prove beyond a reasonable doubt that he was not acting in self-defense.[1]
The state presented the testimony of three witnesses: the victim, her treating ophthalmologist, and the detective who investigated the offense. The victim, a teacher for the Early Head Start program, stated that she went to the defendant's home after she got off work. (Although she and the defendant did not live together, she apparently spent a great deal of time at his home, where she assisted him with the care of his elderly mother.) After arriving at the defendant's residence, the victim began drinking wine and continued to do so throughout the evening.
At some point during the evening, she allowed the defendant to use her cellphone to call his ex-wife to obtain information he needed for an application for disability. Concerned that the conversation was becoming "too relaxed," she demanded her phone back. She then noticed that the bed had been remade and accused the defendant of cheating on her. They verbally argued, and the victim declared her intention to gather her belongings and leave. At this point, the defendant struck her in the face, and the victim "blanked out." When she got back up, the defendant apologized for hitting her.
Although the defendant initially tried to call his sister to take her to the emergency room, the victim insisted on having her daughter take her. The victim was taken to University Health Hospital, where she underwent treatment. She required surgery and was initially hospitalized for two days. She testified that she was in constant, severe pain until her left eye was removed a month later in a second operation. On a scale of 1 to 10, the victim described her pain level as being at 10 throughout this time period. Due to the loss of her eye, she has been unable to return to work.
The victim's ophthalmologist testified that, when the patient first presented, it was his understanding that she had been struck in the face, and her injuries were consistent with such a blow. The doctor detailed the seriousness of the victim's injuries. In describing her ruptured eyeball, he stated that she was struck in the face with such force that much of the contents of her left eye were expelled. She required surgery to close the wound in order to prevent infection and to give the eye time *769 to heal to see if any vision could be achieved. Unfortunately, the damage was so severe and the victim was in such constant pain that enucleation or removal of the eyeball was recommended. A second surgery to remove the eyeball was performed about a month after the injury occurred. According to the doctor, she was subsequently fitted with a prosthesis, which helps the eye socket hold its shape. The state introduced into evidence the victim's medical records, which fully documented all of this testimony and the severity of her injuries.
Detective Chad Dailey of the Shreveport Police Department testified about his investigation. He interviewed the victim several days after the incident. She recounted the circumstances of the attack. She also informed him that, following the incident, the defendant had been texting her, asking her to come back and saying what happened was an accident. In one text, he stated that the incident could bring them "closer together."
On June 25, 2014, one week after the altercation, Detective Dailey interviewed the defendant. According to the detective, the defendant had no visible injuries and did not report sustaining any injuries or receiving medical treatment after the confrontation. After advising the defendant of his rights, Detective Dailey took a recorded statement from the defendant, in which he recounted his version of the incident. The recording was played at the defendant's trial after the trial court ruled that the statement was given freely and voluntarily. The defendant's version of the incident was markedly different from the victim's account. The defendant asserted that he argued with the victim, who was drunk and aggressive, after he rebuffed her sexual advances. He told the detective that she backed him up against a door, "swinging wildly," with her "head down," and "charging [him] like a bull." To defend himself, he put up his arm to "block" her. He speculated that he might have "overblocked" and caught her in the eye. He insisted that he did not intend to hit her in the eye and that he did not even know he had done so until she began bleeding profusely. When the detective repeatedly questioned the defendant about how merely blocking the victim could have caused such serious injuries to her, the defendant admitted that he could not explain why she was so badly injured. He stated repeatedly that he never threw a punch or swung at her, maintaining that he did not intend to hit her. In fact, he stated that he was not scared of the victim harming him. He admitted sending her the subsequent text messages, stating that he still loved and missed her. In particular, he said he loved the way the victim cared for his mother and cleaned. Throughout the statement, the defendant displayed a complete lack of remorse and, instead, repeatedly blamed the victim for causing the injuries to occur.
The defendant presented no witnesses at trial and did not testify.
At the conclusion of the bench trial, the trial court found the defendant guilty of second degree battery. Unlike a jury trial, we have the benefit of the trial court's extensive oral reasons for finding the defendant guilty as charged. It specifically found the victim to be a highly credible witness. Furthermore, combining her testimony with the defendant's statement to the police, the court found that the defendant struck the victim in the face. While the defendant may not have intended to blind the victim, the court concluded that he acted with specific intent and meant to inflict an extremely powerful blow. The trial court categorically dismissed the defendant's claim that this was merely a "tragic accident." Although the defendant did not claim self-defense during the trial, the trial court also addressed this issue and ruled it out.
*770 We find that, viewed in the light most favorable to the prosecution, the evidence presented at trial proved the defendant's guilt beyond a reasonable doubt. The trial court made a credibility determination accepting the victim's account of the altercation and rejecting the defendant's self-serving version. The victim suffered a devastating and vicious blow to the face. Despite the defendant's argument that the victim cannot say she saw him inflict that blow, the evidence established that the defendant was the only person in a position to have struck her. In fact, he admitted as much in his statement to the police. Although he attempted to downplay his actions and characterize the physical contact between himself and the victim which injured her as merely a "blocking movement" to defend himself, his statement nonetheless confirmed that his intentional actions caused her severe injuries. Furthermore, he utterly failed to establish any possible self-defense claim by a preponderance of the evidence. See State v. Kirkland , 42,397 (La. App. 2 Cir. 8/15/07), 962 So.2d 1173, writ denied , 2007-1928 (La. 2/15/08), 976 So.2d 174, in which this court affirmed a second degree battery conviction, finding that "[t]he multiple broken bones in the victim's face and the resulting vision loss demonstrate the tremendous force used by [the defendant] and are sufficient evidence to show that he had the specific intent to inflict serious bodily injury."
This assignment lacks merit.
EXCESSIVE SENTENCE
Law
A reviewing court imposes a two-prong test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. Shipp , 46,715 (La. App. 2 Cir. 11/2/11), 78 So.3d 805. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. Mandigo , 48,801 (La. App. 2 Cir. 2/26/14), 136 So.3d 292, writ denied , 2014-0630 (La. 10/24/14), 151 So.3d 600.
Second, a sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Shipp , supra . A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Little , 50,776 (La. App. 2 Cir. 8/10/16), 200 So.3d 400, writ denied , 2016-1664 (La. 6/16/17), 219 So.3d 341.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cotten , 50,747 (La. App. 2 Cir. 8/10/16), 201 So.3d 299. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Duncan , 47,697 (La. App. 2 Cir. 1/16/13), 109 So.3d 921, writ denied , 2013-0324 (La. 9/13/13), 120 So.3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular *771 case, and, therefore, is given broad discretion in sentencing. State v. Cook , 95-2784 (La. 5/31/96), 674 So.2d 957, cert. denied , 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996) ; State v. Bailey , supra .
At the time of the offense, the sentence for a conviction of second degree battery was a fine of not more than $2,000 or imprisonment, with or without hard labor, for not more than five years, or both. La. R.S. 14:34.1.[2]
Discussion
The defendant claims that the sentence imposed was statutorily and constitutionally excessive.
During a violent confrontation, the defendant struck the victim in the face with such force that her nose was broken, her left eye socket was fractured, and her left eyeball ruptured. As a result of the injury to her eye, the victim was ultimately forced to have her left eyeball removed. In addition to the permanent loss of sight, the victim is now required to wear a prosthesis in that eye socket. Additionally, due to her injury, she was unable to return to her job and suffered major financial hardship.
Our review of the record reveals that the trial court adequately articulated the factors it relied upon in imposing sentence. In particular, the trial court cited as aggravating factors the undue risk of the defendant committing another crime, the vicious nature of the attack, and the substantial and permanent physical harm suffered by the victim. The trial court also considered the defendant's criminal history, which included a 1975 federal racketeering conviction; a 1993 conviction for cocaine possession in Texas; and a 2010 conviction for possession of drug paraphernalia in Louisiana. It further noted that the defendant had not acted under strong provocation and that he lacked substantial grounds tending to excuse and justify his criminal conduct.
We find that the trial court did not abuse its wide discretion in imposing this near-maximum sentence upon this defendant, who showed no real remorse for his actions. In light of the permanent and devastating harm suffered by the victim, we find that the sentence imposed by the trial court does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense.
This assignment lacks merit.
ERROR PATENT
Our error patent review reveals that the trial court did not properly advise the defendant of the prescriptive period for seeking post-conviction relief, as required by La. C. Cr. P. art. 930.8(C). Therefore, we advise the defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under La. C. Cr. P. arts. 914 or 922. See La. C. Cr. P. art. 930.8(A) ; State v. Brooks , 49,024 (La. App. 2 Cir. 5/14/14), 139 So.3d 1072, writ denied , 2014-1202 (La. 2/13/15), 159 So.3d 459.
CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.

We note that, during the trial, the defendant's position was that what transpired was a "horrible" and "tragic accident" and that there was no proof of a specific intent to cause any injuries. The argument on appeal pertaining to self-defense was never urged below. In finding the defendant guilty, the trial court determined there was no legal justification for the defendant's actions and there was no viable self-defense claim.

The statute was amended to increase the penalty from five years to eight years by Acts 2014, No. 722, effective August 1, 2014. The instant offense occurred on June 18, 2014. A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense. State v. Sugasti , 2001-3407 (La. 6/21/02), 820 So.2d 518 ; State v. Modisette , 50,846 (La. App. 2 Cir. 9/28/16), 207 So.3d 1108.