**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**19-39**

**STATE OF LOUISIANA**

**VERSUS**

**GERRELL WASHINGTON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2017-CR-200827-A
HONORABLE KERRY L. SPRUILL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
	**Gerrell Washington**

**Hon. Charles A. Riddle, III**
**District Attorney**
**Twelfth Judicial District Court**
**Emily Edwards Bertholl**
**Assistant District Attorney**
**Post Office Box 503**
**Marksville, Louisiana 71351**
**(318) 240-7123**
**COUNSEL FOR APPELLEE:**
	**State of Louisiana**

**SAVOIE, Judge.**

On June 14, 2017, Defendant, Gerrell Washington, was charged by bill of information with second degree battery, a violation of La.R.S. 14:34.1. By written motion filed on January 11, 2018, Defendant waived his right to a jury trial.[1] On July 19, 2018, Defendant was tried by bench trial on both the present charge, second degree battery, and a charge filed in a separate docket number, cruelty to persons with infirmities.[2] The trial court found Defendant guilty of both charges. The trial court ordered a Pre-Sentence Investigation (PSI) report and set sentencing.

On September 17, 2018, the trial court sentenced Defendant on the second degree battery conviction to eight years in the Department of Corrections, to run concurrently with the sentence imposed for cruelty to persons with infirmities. On the cruelty to persons with infirmities conviction, the trial court imposed a sentence of ten years in the Department of Corrections, with all ten years to be served without benefit of parole, probation, or suspension of sentence. Defense counsel asserted an objection and subsequently filed a written Motion for Reconsideration, alleging the sentences imposed were excessive. The trial court set the Motion for Reconsideration for hearing on October 16, 2018. After hearing argument, the trial court denied the Motion for Reconsideration.

---

[1] We note that the written Motion to Waive Jury filed by Defendant's counsel and signed by Defendant refers to Defendant's charge as "aggravated battery," instead of "second degree battery," the charge at issue in the present case. However, it is clear that Defendant intended to waive his right to a jury in the present case since the motion contains the docket number in the present case, and the trial court discussed the waiver with Defendant in open court.

[2] In a separate docket number, Defendant was charged with cruelty to persons with infirmities arising out of the same incident. Although the record does not contain a motion to consolidate, Defendant was tried in the same bench trial on both charges. Defendant's appeals of both convictions are presently before the court in separate docket numbers specifically, cruelty to persons with infirmities under appellate docket number 19-38 and second degree battery under appellate docket number 19-39.

Defendant's Motion and Order for Appeal was granted on September 24, 2018. For the following reasons that will be discussed, we affirm with instructions.

## FACTS

On May 1, 2017, Defendant, a forty-three-year-old inmate, was working at the Bunkie Senior Center as part of a work release program. The victim, Ruddio Rico, age sixty-eight at the time of the incident, worked with his wife as a volunteer at the center. At trial, the victim explained that earlier that day his wife told him Defendant "cussed" at her and threatened her when she told him not to pressure wash near the cracks of the windows. According to the manager of the Bunkie Senior Center, she saw the victim walk up to Defendant and tell Defendant to never call his wife names again. The victim testified that he also told Defendant that if he ever had a conflict with his wife again, he would send Defendant back to jail. When the victim turned around and walked back to his truck, Defendant followed and asked what the victim was going to do about it. The victim turned around to face Defendant, and Defendant hit the victim in the face. The victim fell backward, and Defendant began "stumping" the victim's hands and kicking the victim in the back. Defendant stopped beating the victim when the manager yelled at Defendant to go inside. The manager estimated the attack lasted about five minutes.

According to the manager, the victim was bleeding from his face, nose, eyes, and hand, leaving a pool of blood where he lay. The manager did not see any weapons on the victim and did not hear the victim make any threats to Defendant. When asked if the victim yelled during the attack, the manager replied, "No, I

2

mean it just happened so fast, he just turned around and Gerrell hit him with his fist."

The victim described the beating as follows:

A. He hit me right here in the eye.

Q. And you've indicated just for the record, your right eye?

A. Right eye, it's a prosthetic eye right now. And then hit me on the nose and then I have a cut on here right here. And then I fell to the ground unconscious he put his hand . . . or his foot over my left hand . . . . And he was smashing down on my hand with foot [sic] and he was kicking me in the back several times and he kicked me in the head several times.

The victim also testified that he was 99% unconscious after he was hit. The victim described the pain he felt as being worse than his wound in Vietnam. The victim was transported by ambulance to Bunkie General Hospital, where he was then transported by helicopter to Shreveport. When asked to describe the victim when she saw him at the hospital, the victim's wife stated, "He was real bad off, he was bleeding from the eye and his hand and then he was . . . his eye was all bruised and it was horrible." The victim stayed at LSU Medical Center in Shreveport for about seven days.

As a result of Defendant's attack, the victim lost his right eye and some teeth. The victim continues to suffer from blurred vision in his left eye, memory loss, and headaches. As a result of injuries to his left hand, the victim underwent two surgeries and still suffers from pain in his hand. The doctor in Shreveport initially tried to save the victim's right eye but a few days later decided it was best to remove it. The victim did not have facial reconstruction surgery since it would have interfered with other problems. After counsel noted the victim was currently

3

walking with a cane, counsel asked if the victim walked with a cane on the day of the incident. The victim responded:

A. No.

Q. Is your reason for walking with a cane a direct result of the beating?

A. No [sic] a direct result with the beating because I had tremendous back surgery which you cannot return for sure sure [sic] if that indicated some of the cause.

In his defense, Defendant presented the testimony of one officer regarding a voluntary statement he received from an eye-witness. The witness stated that he saw "a white male elderly man push Gerrell, Gerrell then punched him in the face, the police were then called." Additionally, the victim's wife testified that when she told her husband (the victim) about her run-in with Defendant, her husband said that it did not sound like Defendant. Defendant testified that on the day in question, he was having an issue with the victim's wife trying to supervise him. When Defendant discussed the issue with his real supervisor, the victim's wife got upset and left. Shortly thereafter, Defendant testified, the victim drove up, slammed his car door, walked up to Defendant, and pushed Defendant in the chest. The victim threatened to "plant" Defendant "in the ground" if he ever called his wife a "b-i-t-c-h" again. Defendant testified that the victim followed him and tried to grab his shirt. Defendant further testified that he automatically "went on defense" and hit the victim. Defendant denied jumping or "stumping" the victim.

Defendant testified that he was approved for the work release program because of his "outstanding disciplinary jacket." According to Defendant, he had "no violence in [his] jacket" in almost twenty years of incarceration. On cross-

4

examination, Defendant testified that he participated in the sport of boxing while in prison.

After hearing the evidence presented, the trial court found Defendant guilty of both offenses, ruling as follows:

BY THE COURT:

I thank you for your presentations of evidence here today. And really in two separate charges and I will address them separately.

Second Degree Battery is defined by Louisiana Revised Statute 14:34.1, second degree battery is a battery when the offender intentionally inflicts serious bodily injury. The evidence presented here today it is abundantly clear that the State met it's [sic] burden of proof the defendant is guilty as charged of second degree battery. The victim Mr. Ruddi Rico sustained very severe injuries to his left eye and lost the left eye, has a prosthetic eye today, severe damage to his right vision. He has damage to his face, damage to his nose and lots of bleeding, lots of pain, loss of teeth and has memory problems all as a result of the and as a consequence of the beating that was inflicted upon him by Gerrell Washington on May 1st, 2017.

This court has not considered if a defense to the charge that anybody exercised any authority over anybody, the series of events are most regrettable that occurred that day. Regrettable as they may be the consequence and the results that occurred are clear violations of the criminal statute for which there has been no defense shown in this courtroom here today.

Accordingly I find the defendant guilty as charged of Second Degree Battery based upon the events and testimony of the victim, Ms. Sherry Guillory and Officer Lee who all testified about the events that occurred that day.

As far as the next charge Cruelty to Persons with Infirmities, that statute and I'm just going to read the words that apply to today's case and it says '[c]ruelty to persons with infirmities under 93.3 of the criminal code is the intentional mistreatment by any person whereby unjustifiable pain is caused to a person who is aged.

Aged is defined in Section C as a person or individual 60 years of age or older. It is without doubt that the victim of this crime was 68 years old on May 1st, 2017.

The State has proven each and every element of this offense beyond a reasonable doubt as to each element charged in this crime, in

5

both crimes, accordingly I find the defendant guilty as charged to both crimes by evidence beyond a reasonable doubt.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one error patent involving the sentence imposed and one error patent as to the minutes of sentencing. The error patent involving the minutes of sentencing is assigned as error and will be addressed in Assignment of Error Number Two.

At sentencing, the trial court stated the following regarding diminution of sentence:

> The sentences imposed herein are not enhanced sentences as defined in our law. As required by Article 890.1 of the Code of Criminal Procedure, I hereby inform you that the crime of second degree battery to which you have been convicted is a crime of violence as defined by our law and the sentence is not subject to diminution for good behavior. Additionally, the crime of cruelty to persons with infirmities is not listed as a crime of violence in our law and the sentence on this charge is subject to diminution for good behavior.

The trial court's statement appears to be a denial of diminution of sentence for the conviction of second degree battery. "[A] trial court lacks the authority to grant or deny good time. Except where otherwise provided by law, the provisions of LSA-R.S. 15:571.3(C) are directed to the Department of Corrections exclusively, and 'the sentencing judge has no . . . role in the matter of good time credit.'" *State v. Braziel*, 42,668, p. 12 (La.App. 2 Cir. 10/24/07), 968 So.2d 853, 861 (citing *State ex rel. Simmons v. Stalder,* 93-1852 (La.1/26/96), 666 So.2d 661). Accordingly, Defendant's sentence for second degree battery shall be amended to delete the trial court's statement regarding diminution eligibility, and the trial court is instructed to make an entry in the minutes reflecting this amendment. *See State v. Drummer*,

17-790, p. 7 (La.App. 3 Cir. 6/6/18), 245 So.3d 93, 98, *writ denied*, 18-1139 (La. 2/11/19), 263 So.3d 413.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant asserts that the maximum eight-year sentence is excessive for the second degree battery offense because Defendant was afraid of the victim and felt threatened by the victim's verbal confrontation. The penalty provision for second degree battery provides, in pertinent part: "Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than eight years, or both." La.R.S. 14:34.1(C). Although the trial court did not impose a fine, it imposed the maximum term of imprisonment.

At the same sentencing proceeding, the trial court sentenced Defendant for cruelty to persons with infirmities to ten years in the Department of Corrections, with all ten years to be served without benefit of probation, parole, or suspension of sentence. As with the second degree battery sentence, the trial court did not impose a fine. However, the trial court imposed the maximum term of imprisonment for cruelty to a person with an infirmity, as well as the maximum amount of time to be served without benefits. As previously stated, the trial court ordered the sentences to run concurrently.

The analysis for an excessive-sentence claim is well-settled:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment."

7

To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00) [765 So.2d 1067]; 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983) ), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261. "[M]aximum sentences 'are reserved for . . . the most serious violations of the charged offense and for the worst kind of offender.'" *State v. Cozzetto*, 07-2031, p. 2 (La. 2/15/08),

974 So.2d 665, 666 (quoting *State v. Quebedeaux,* 424 So.2d 1009, 1014 (La.1982)).

*Sentencing Hearing*

The victim's wife gave the following statement at sentencing:

> What made that day any different than any other day because he took orders from (INAUDIBLE) along with all the others in the center, he mentioned he never had a problem. I prayed to God to give me strength to forgive him but I can't. My husband is a hundred per cent [sic] disabled vet and was trying to help the center get a new face lift. He destroyed my husband's life and our entire family. My husband loves to hunt and fish he took his sight, the use of his left hand, his memory loss, hearing and he broke a lot of his teeth. He has to have someone with just about all the things because it's hard for him to get around. He has to have someone with him all the time. I now pray that this court has . . . take his life and sentence him to life without the possibility of parole and credit him for time served. If he doesn't get life please give him the maximum sentence without possibility of parole. This person is a repeat offender and if released he will end up killing someone due to his violence.

The trial court stated the following when imposing the sentence in the present case:

> The Court considers the following sentencing guidelines under Article 894.1 of the Code of Criminal Procedure pertinent to these proceedings; to wit:
>
> 1. there is an undue risk that during the period of a suspended sentence or probation that the defendant may commit another crime;
>
> 2. the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and,
>
> 3. a lesser sentence will deprecate the seriousness of the defendant's crime.
>
> Additionally, the Court considers the following grounds provided in Code of Criminal Procedure Article No.: 894.1, relevant to the sentencing of this defendant, to-wit:
>
> 1. the offender's conduct during the commission of the offense manifested deliberate cruelty to the victim;

9

2.     the offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability or ill health;

3.     the offense resulted in a significant permanent injury to the victim; and,

4.     the offender used actual violence in the commission of the offense.

A pre-sentence investigation report was prepared by Probation and Parole Officer, Kristin Brouillette, and same has been filed of record in these proceedings. Gerrell Washington is classified as a fourth felony offender with a previous conviction for aggravated battery on 5/1/1995 in Terrebonne Parish, Louisiana (original charge was second degree battery). The defendant's record further bears a conviction for armed robbery on 4/1/1999 which also occurred in Terrebonne Parish, Louisiana. Gerrell Washington has a pre-trial date scheduled for 10/30/2018 and a trial date scheduled for 11/13/2018 for the pending charge of battery of a correctional facility employee in Allen Parish, Louisiana (date of alleged offense 6/06/2018). The defendant's criminal history reflects a propensity for violent crime and a felony record with offenses that have not been considered for multiple offender adjudication (see pre-sentence investigation report).

The Court has taken into consideration the severity of the beating inflicted upon the victim, Ruddie Rico, and the permanent physical injury that has resulted to him. The Court has further considered the great pain and suffering that Mr. Rico has endured by virtue of the defendant's criminal conduct, the significant cost of medical expenses attendant thereto, the need for continuing and future medical treatment for Mr. Rico and the permanent loss of eyesight suffered by him. The Court recognizes that under the factual situation presented at bar that the defendant may have felt personal anger from the circumstances arising in his work release environment. However, those personal feelings do not justify by any means whatsoever the cruel and severe beating inflicted upon the physical-ill [sic], sixty-eight-year-old victim. As required by the cruelty to the infirmed statute (La.R.S. 14:93.3), the evidence presented at trial supports a finding beyond reasonable doubt that the victim, Ruddie Rico, was a person with infirmities and of advanced age, who was subject [sic] to intentional mistreatment by Gerrell Washington that resulted in unjustifiable pain and suffering to Mr. Rico.

. . . Without any question and beyond any reasonable doubt, the trial evidence supports a finding that the acts of cruelty inflicted upon the victim, Ruddie Rico, were both intentionally and maliciously committed by Gerrell Washington. Accordingly, the defendant is

10

ordered to serve ten (10) years in the custody of the Department of Corrections with the State of Louisiana with all ten (10) years of the sentence imposed being without benefit of probation, parole or suspension of sentence; the defendant is further awarded credit for time served since arrest for this offense.

Second degree battery is defined as follows, to-wit:

"La.R.S. 14:34.1: Second degree battery

A. Second degree battery is a battery when the offender intentionally inflicts serious bodily injury; however, this provision shall not apply to a medical provider who has obtained the consent of the patient."

Serious bodily injury is defined as a bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. The evidence presented at trial supports a verdict of guilty to the charge of second degree battery as the battery committed by the defendant, Gerrell Washington, upon the victim was intentional and the victim suffered serious bodily injury. Serious bodily injury in this case involved extreme physical pain, protracted and obvious disfigurement and impairment/permanent loss of eyesight for Mr. Ruddie Rico with a need for a prosthetic eye.

. . . Accordingly, and because of the intentional infliction of such extremely serious bodily injury upon the victim in this case, the Court imposes a sentence of eight (8) years in the custody of the Department of Corrections for the State of Louisiana, with credit for time served since arrest for this offense, said sentence to run concurrent with the sentence imposed this date in Criminal Docket No.: 200,824 on the charge of cruelty to the infirmed.

At the hearing on the motion to reconsider sentence, the trial court denied the motion, reasoning as follows:

BY THE COURT:

All right. And I thank you both. I do appreciate the opportunity to revisit and reconsider the situation. If memory serves me correctly and I think it does I think this particular case involved some very, very serious injuries, in fact permanent injuries which the victim lost eye sight and has underwent surgeries in fact multiple surgeries and large hospital bills and his life is forever . . . it will never be the same; 68 years or whatever age he was. I mean his life is

11

impacted so negatively and the injury to him was so great his life will never be the same.

I just under the circumstances I thought the court was very lenient, very gracious and very kind when I did not impose consecutive sentences for what happened. And although I had the discretion under the law and could have those sentences run consecutively, chose not to run them based on the circumstances, it all alleged[ly arose] out of the same occurrence and the same situation.

I have given consideration to that fact in the initial sentencing and I did not overlook the fact that it involved a single event and a single hitting as has been argued here today. I find that the motion is without merit and there are no legal grounds for the court to grant the reconsideration, in fact I do think full benefit was granted and my latitude begs the positions that the event was a singular event and a single hitting. When I imposed sentence and made sentence run concurrent in this case instead of consecutive, even in light of the serious nature of the injuries and the permanent injuries that were inflicted as a result of the beating that was inflicted in this case.

The Motion is denied.

### Defendant's Argument in Brief

Defendant argues the trial court's imposition of the maximum sentence was excessive in this case. Defendant claims he was afraid of the victim and hit the victim only once after the victim pushed him and threatened to "plant him in the ground." Defendant further argues the trial court failed to give sufficient weight to the victim's threat "to plant Defendant in the ground," especially since the victim was a hunter. Additionally, Defendant claims he had a non-violent prison record for almost twenty years prior to the offense at issue. Finally, Defendant asserts no dangerous weapon was used; the injuries, although serious, occurred in a single event; the abuse was not on-going, Defendant is remorseful; and the action is not likely to reoccur.

Defendant cites several cases wherein lesser sentences were imposed for similar or worse conduct. In *State v. McBride*, 00-422 (La.App. 3 Cir. 11/15/00),

773 So.2d 849, *writ denied*, 01-294 (La. 2/8/02), 807 So.2d 858, the defendant was sentenced to four years and ten months imprisonment and to pay a $1,000 fine. The trial court suspended all but six months of the prison term and placed McBride on supervised probation. This court upheld the sentence, noting the victim sustained a significant injury (a cut throat which damaged his jugular vein and thyroid blood vessels), McBride committed other crimes against the victim for which he had been found guilty, McBride used a dangerous weapon, and McBride had a previous conviction for arson in 1974. *McBride*, 773 So.2d at 852, 864-65.

In *State v. Francisco*, 10-881 (La.App. 3 Cir. 2/2/11), 55 So.3d 995, the defendant was sentenced to five years at hard labor for second degree battery committed against his girlfriend. Five years was the maximum sentence a defendant could receive for second degree battery at that time.[3] Francisco beat the victim on the side of her head and face, dragged the victim by her hair, and slammed the victim into the door frame, knocking her unconscious. *Id.* Francisco continued kicking and punching the victim. *Id.* The victim suffered bruising and swelling on the left side of her face, bruising on her left arm and leg, and a broken rib. *Id.* In upholding the sentence, this court noted Francisco's extensive criminal history of six felonies and Francisco's numerous arrests for domestic abuse battery, trespassing, aggravated battery, stalking, and violations of protective orders. *Id.* This court discussed sentences imposed in other second degree battery cases:

> In support of his excessive sentence claim, Defendant refers to *State v. Tisby,* 33,591 (La.App. 2 Cir. 6/21/00), 764 So.2d 209, *writ denied,* 00–2236 (La.6/1/01), 793 So.2d 181, wherein the defendant was convicted of second degree battery and sentenced to two and one-half years at hard labor. The defendant and his girlfriend were guests at a barbeque when the defendant forcibly removed his girlfriend from

---

[3]The maximum sentence for second degree battery increased from five years to eight years in 2014. 2014 La. Acts. No. 722 § 1.

the gathering and took her home. Afterwards, the victim went to the defendant's house to check on the defendant's girlfriend. When the victim tried to enter the house, the defendant swung a sling blade at him, cutting him across the face. At sentencing, the trial court noted the defendant's criminal history, which included a conviction for simple robbery, reduced by plea agreement from a first degree robbery charge, and convictions for driving while intoxicated. Also, the forty-year-old defendant was the father of three children and a high school graduate who had served three years in the military. The sentence was affirmed on appeal.

However, this court has affirmed the maximum five-year sentence for second degree battery in similar cases. Most recently, in *State v. Thomas,* 08–1280 (La.App. 3 Cir. 4/1/09), 7 So.3d 802, the defendant was involved in a physical altercation with the victim and stabbed him in the neck and twice in the back with a knife. On appeal, the court found that the sentence was not excessive, considering the defendant's criminal history as a second felony offender. He also had four misdemeanor convictions and approximately twenty-eight separate encounters with law enforcement agencies, fifteen of which were classified as crimes against a person. The court also found that the evidence supported the greater charged offense of aggravated battery and that a subsequent jailhouse fight wherein the defendant beat the victim demonstrated a patent lack of remorse.

In *State v. Hopkins,* 96–1063 (La.App. 3 Cir. 3/5/97), 692 So.2d 538, the defendant received the maximum sentence and was fined $2,000 after his conviction of second-degree battery. The defendant was involved in an argument with the victim and beat her on her bare buttocks with a thick branch, leaving a four-inch bruise. In affirming the sentence on appeal, this court found that the evidence supported the greater charged offense of aggravated battery. No other aggravating or mitigating factors were addressed on appeal.

Considering the brutal beating of the victim in the instant case and Defendant's significant criminal history, we find that the trial court did not abuse its discretion when it imposed the maximum sentence. We likewise find that Defendant is clearly one of the worst offenders, for whom a maximum sentence is intended. Also, the sentence is commensurate with sentences affirmed by this court in comparable cases. Accordingly, Defendant's sentence is affirmed.

*Id.* at 1006-07.

### State's Argument in Brief

The State asserts that the sentence imposed is not excessive:

The State asserts that this was a serious crime which resulted in permanent disfigurement to Mr. Rico. Not only did Gerrell Washington cruelly maim Ruddie Rico, he justified his actions behind the ridiculous notion that a 68-year-old man, nowhere near Mr. Washington's physical condition, would cause him, Mr. Washington, sustained fear of life. Not only did Washington deliver such a severe punch to Mr. Rico that it caused him to lose his eyeball and several teeth, he also continued to kick and stomp on Mr. Rico until he caused other permanent damage. Washington did not stop even at the point where he rendered Mr. Rico unconscious. Before the sentence the defendant showed no remorse for the permanent disfigurement he caused to a veteran, he only disrespected the court even further by yelling obscenities as he was removed from the courtroom.[4] The State asserts that the proper analysis under La.Code of Criminal Procedure Article 894.1 was utilized by the Trial Court. These factors were all considered in the sentence imposed.

*Analysis*

The maximum sentence for second degree battery was increased from five years to eight years in 2014. *See* 2014 La. Acts. No. 722 § 1. Considering Defendant's criminal history and considering the severity and permanent nature of the injuries inflicted, we find the present case comparable to *Francisco* and the cases cited therein where maximum sentences were imposed, albeit five years.

In *State v. Jackson*, 51,575 (La.App. 2 Cir. 9/27/17), 244 So.3d 764, a four-and-one-half year sentence was imposed for a second degree battery committed when the defendant struck the female victim in the face, causing an orbital blowout fracture and a broken nose. *Id.* As a result of the injuries, the victim's left eye ruptured and eventually had to be surgically removed and replaced with a prosthetic eye. *Id.* In reviewing the excessiveness of the sentence, the court noted the defendant's criminal history, which included a racketeering conviction, a possession of cocaine conviction, and a possession of drug paraphernalia

---

[4] The record does not reflect the State's assertion that Defendant yelled obscenities at the court.

conviction. The court concluded, "In light of the permanent and devastating harm suffered by the victim, we find that the sentence imposed by the trial court does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense." *Id.* at 771. Jackson committed the second degree battery two months before the maximum penalty was increased from five years to eight years. Thus, Jackson received a sentence near the maximum.

Although the trial court imposed the maximum term of imprisonment in the present case, it is clear the trial court did not impose it lightly. Furthermore, as noted by the trial court, Defendant received concurrent sentences when consecutive sentences could have been imposed. This court has stated the following regarding a sentencing court's ability to impose consecutive sentences even when the offenses arose out of the same transaction:

> Considering the serious nature and violence used in the commission of the offenses, the trial court in its discretion could have reasonably imposed consecutive sentences for one or more of these offenses even though they constituted parts of a common scheme or plan. "Although Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, La.C.Cr.P. art. 883; *State v. Underwood*, 353 So.2d 1013, 1019 (La.1977), a trial judge retains discretion to impose consecutive penalties on the basis of other factors, including the offender's past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community. *State v. Williams*, 445 So.2d 1171, 1182 (La.1984); *State v. Jacobs*, 371 So.2d 727, 732–33 (La.1979) (on reh'g)." *State v. Thomas*, 98–1144, p. 1 (La.10/9/98), 719 So.2d 49, 49.

*State v. Bartie*, 12-673, p. 25 (La.App. 3 Cir. 12/5/12), 104 So.3d 735, 750, *writ denied*, 13-39 (La. 8/30/13), 120 So.3d 256. As discussed below, the imposition of consecutive sentences was within the trial court's discretion in the present case.

As stated by the trial court, the offense committed in the present case involved significant, permanent injuries to the victim. While Defendant argues that he hit the victim only once, the police investigation shows that the victim

suffered a violent and sustained beating. The exhibits introduced at trial, including original photos of the injuries sustained by the victim, are not part of the appeal record. However, copies of those photos are attached to the probable cause affidavit. The photos show significant injuries sustained by the victim to his eye and hand. The record of the 911 emergency call from the incident, referencing injuries to the victim's eye and finger, is also attached to the probable cause affidavit. In the PSI, the victim stated Defendant caused him to lose his eye and caused his hand to be paralyzed. The victim also stated that his hand is wired together, he has had back surgery, he has had memory and hearing loss, and he is responsible for reimbursing Medicare for his medical bills, which are estimated to be around two million dollars.

Additionally, according to the PSI, Defendant is classified as a fourth-felony offender, with a lengthy criminal history:

- 4/19/1993 – Pled guilty to damage to property over $500.

- 7/14/1994 – Pled guilty to shoplifting.

- 1/27/1994 – Arrested and later pled guilty to possession of stolen property over $1000.

- 1/27/1994 – Arrested and later pled guilty to reckless operation of a vehicle.

- 2/3/1994 – Arrested and later pled guilty to simple criminal damage to property.

- 5/1/1995 – Pled guilty to aggravated battery.

- 5/1/1995 – Pled guilty to possession with the intent to distribute cocaine.

- 9/26/1995 – Arrested and later pled guilty to simple criminal damage to property.

- 6/12/1997 – Arrested and later pled guilty to enter/remain in places/on land after being forbidden.

17

- 6/15/1997 – Arrested and later pled guilty to misrepresentation during booking.

- 4/1/1999 – Pled guilty to armed robbery.

- 4/1/1999 – Pled guilty to manufacture/distribution of CDS II

- 7/19/2018 – Convicted of second degree battery (instant offense).

- 7/19/2018 – Convicted of cruelty to persons with infirmities (instant offense).

- 3/7/2018 – Pled guilty to public intimidation.

- 6/6/2018 – Arrested for battery of a correctional facility employee.

Of particular note is Defendant's history of violent offenses, including a previous conviction for aggravated battery in 1995 and a conviction for armed robbery in 1999. In June 2018, Defendant committed a battery on a correctional facility employee, which was still pending at the time of sentencing. Thus, Defendant's propensity for violence continued even after the current offense.

When the offense at issue occurred, Defendant was on a work release program, a time during which he should have been on his best behavior. Even considering Defendant's claim that he was provoked and in fear of a sixty-eight-year-old man, the extreme beating that Defendant inflicted upon the victim while on a work release assignment shows Defendant is a danger to society. Considering this fact along with Defendant's past criminal history, the trial court could have ordered the second degree battery sentence to run consecutively to the sentence imposed for cruelty to a person with an infirmity. Nonetheless, the trial court ordered Defendant's sentence for second degree battery to run concurrently with the sentence for cruelty to a person with an infirmity. Consequently, even though Defendant's sentences are the maximum for each crime, Defendant will actually be

serving only one maximum sentence when he could be serving two. Additionally, the trial court did not impose any fine even though it was permitted to do so by the penalty provision. *See* La.R.S. 14:34.1.

Considering the extreme injuries suffered by the victim in the present case, Defendant's criminal history, Defendant's continued propensity for violence, and the trial court's order that the present sentence be served concurrently with the offense of cruelty to a person with an infirmity, we find that the sentence imposed for second degree battery is not excessive. Additionally, the supreme court has repeatedly stated "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing *State v. Walker*, 00-3200 (La. 10/12/01), 799 So.2d 461; *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996); and *State v. Humphrey*, 445 So.2d 1155 (La.1984)).

For the foregoing reasons, we find that this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant contends and the State agrees that the minutes of sentencing incorrectly reflect that the trial court ordered the sentence imposed for second degree battery to be served without benefit of probation, parole, or suspension of sentence. The transcript of sentencing shows the trial court ordered the denial of such benefits for the conviction of cruelty to a person with an infirmity but did not deny such benefits for second degree battery. If there is a conflict between the minutes and the transcript, the transcript prevails. *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01),

19

797 So.2d 62. Accordingly, we find that the minutes of sentencing should be amended to accurately reflect the sentence imposed by the trial court.

## **DECREE**

Defendant's sentence is affirmed. However, Defendant's sentence for second degree battery is amended to delete the trial court's statement regarding the denial of diminution eligibility, and the trial court is instructed to make an entry in the minutes reflecting this amendment. The trial court is also instructed to amend the minutes of sentencing to accurately reflect the sentence imposed by the trial court by deleting the statement that the trial court imposed the sentence for second degree battery without benefit of probation, parole, or suspension of sentence.

**AFFIRMED WITH INSTRUCTIONS.**