764 So.2d 209 (2000)
STATE of Louisiana, Appellee,
v.
Barry TISBY, Appellant.
No. 33,591-KA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*210 Louisiana Appellate Project By J. Wilson Rambo, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, Don M. Burkett, District Attorney, Richard Z. Johnson, Jr., Assistant District Attorney, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
The defendant, Barry Tisby, was charged by bill of information with aggravated battery and was found guilty by a unanimous jury of the lesser and included offense of second degree battery, a violation of La. R.S. 14:34.1. The trial court sentenced the defendant to two and one-half years at hard labor with credit for time served. The defendant now appeals his conviction and sentence. We affirm.

FACTS
The incident which led to the defendant's conviction occurred during the evening of May 17, 1999. At the time of the incident, the defendant was living with Brenda Atkins, his girlfriend, in Funston, Louisiana in Desoto Parish. Brenda and her sister, Bobby Atkins, were at the home of Louis Barnes for a barbecue. Bobby lived with her fiancé, Ronnie Robinson, at Barnes' residence, which was located near the home shared by the defendant and Brenda. The defendant went to Barnes' home and forcibly removed Brenda from the premises to take her home. Brenda's nephew, Lorenzo Atkins, saw the defendant push Brenda to the ground and reported the disturbance to Bobby and Ronnie. Bobby and Ronnie walked from Barnes' residence to the house where the defendant and Brenda lived. Bobby went *211 inside to check on Brenda. The defendant told Ronnie to leave the premises. When Ronnie attempted to walk into the house, the defendant swung a slingblade at him, cutting him across the face. The defendant left the premises, but not before breaking the electric meter and leaving the house in darkness. Ronnie went inside and waited with Bobby and Brenda for the arrival of the police and an ambulance. Deputy Edwin Scott of the Desoto Parish Sheriff's Office responded to the call and picked up the defendant who was walking along a road. The defendant was charged with aggravated battery, a violation of La. R.S. 14:34, for cutting Ronnie Robinson with a slingblade.
At a jury trial on September 15, 1999, the state presented the testimony of Brenda Atkins, Bobby Atkins, Lorenzo Atkins, Ronnie Robinson, and Deputy Scott. Brenda Atkins testified that the defendant came into Louis Barnes' house cursing, took her out of the house, and hit her. When they arrived home, he again hit her in the face, knocking her to the floor. Brenda recalled her sister, Bobby, coming in to check on her and heard the defendant cursing at Ronnie Robinson and asking whether he wanted "a piece of" him. Brenda testified that Ronnie came inside bleeding and that his "whole face was wide open." According to Brenda, Ronnie stated that the defendant cut him. Brenda admitted that she drank beers that day, but she denied drug use. She testified that neither Bobby nor Ronnie had weapons.
Bobby Atkins testified that her nephew, Lorenzo Atkins, told her that the defendant was "jumping on his aunt." Bobby and Ronnie went to Brenda's home to see what was happening. Bobby testified that neither she nor Ronnie had weapons. She denied making threats toward the defendant. She admitted that she had been drinking that day. According to Bobby, as she and Ronnie arrived at Brenda's house, she heard the defendant cursing at her younger nephew, Scorpio Atkins, and telling him to get away. Bobby stated that the defendant was standing outside holding a slingblade. She asked him about the weapon, and the defendant responded that it was none of her business. Bobby stated that she went inside to check on Brenda, who was crying. Shortly thereafter, Ronnie came inside and said, "Baby, I've been cut." Blood was coming down his face. Bobby admitted that she had a prior misdemeanor theft conviction from 1984. She also admitted on cross examination that the defendant had her removed from the residence she previously shared with him and Brenda due to his belief that she had threatened him. She denied making any such threats.
Lorenzo Atkins, the 16 year old nephew of Brenda and Bobby, testified that he saw the defendant walking around, and from the expression on his face, the defendant appeared upset. The defendant asked Lorenzo if he had seen Brenda. Lorenzo testified that he saw the defendant enter Barnes' house, grab Brenda, push her to the ground, pick her up, and take her to their own house. Fearing for Brenda's safety, Lorenzo reported the incident to Bobby and Ronnie. Lorenzo stated that neither Bobby nor Ronnie had weapons and that neither of them threatened the defendant. Although Lorenzo did not see the defendant cut Ronnie, he did see Ronnie holding his face and the defendant holding the slingblade and asking "who wants some." Lorenzo then went to a neighbor's house to call an ambulance.
Ronnie Robinson, the victim, testified that he saw an argument between the defendant and Brenda at Barnes' house and that the defendant "kinda drug her a little bit" back to their house. Ronnie stated that he and Bobby walked to Brenda's house to check on the commotion. They did not have weapons. Bobby walked inside first, and he followed behind her. The defendant, who was holding the slingblade in his hand, started cursing and telling Ronnie to get out of his yard. Ronnie *212 stated that he told the defendant that he did not want to fight. He also stated that Bobby was calling him to come inside to see about her nephew. According to Ronnie, as he attempted to walk through the screen door into the house, the defendant hit him with the slingblade. Ronnie then walked into the house and told Bobby and Brenda that the defendant cut him. He required 110 stitches on his face. Ronnie admitted that he drank a six pack of beer that day. He also admitted to a prior auto theft conviction. He also recalled wrestling or tussling with the defendant at a pool hall and described it as no big deal.
Deputy Scott testified that on his way to responding to the call, he saw the defendant walking along the road. The person he saw walking fit the description given by the witnesses, so he went back to pick up the defendant. According to Deputy Scott, the defendant stated that his brother-in-law came to his house, they got into an altercation, and he hit his brother-in-law with a slingblade. Deputy Scott recalled the defendant saying something about an axe or an axe handle, but he did not check for this weapon.
The defendant testified on his own behalf. The defendant stated that he had been living in Funston for 14 or 15 months and that he had no family there. He stated that after work on the day of the incident, he spent some time under a tree drinking beer with the guys. The defendant testified that he believed Brenda might be doing drugs at Barnes' residence, so went there to find her and take her home. He stated that Brenda became agitated, so he grabbed her and physically removed her from Barnes' house. According to the defendant, Brenda fell to the ground and he helped her get up. However, he admitted that he hit her on the chin once they were home. The defendant stated that he saw Lorenzo, who left to go tell Bobby and Ronnie about the fight. The defendant testified that he then saw Bobby and Ronnie approaching. Bobby was armed with an old shotgun and Ronnie had an axe handle. The defendant looked around and found the slingblade. He and Bobby wrestled over the gun, then she went inside. The defendant testified that he told Ronnie to leave, but Ronnie proceeded to go by him, so he swung the blade. On cross examination and re-direct, the defendant stated that he hit Ronnie as Ronnie lifted the axe handle. After being hit, Ronnie went inside the house. According to the defendant, others began arriving, and fearing that they might harm him, he left the premises. The defendant stated that he was agitated and angry, so he pulled out the electric meter. The defendant admitted to a prior simple robbery conviction in 1994 and a DWI in 1998. He also admitted to an aggravated assault charge in 1993.
After hearing the testimony related above, the jury returned a verdict of guilty to the lesser included offense of second degree battery. The defendant was subsequently sentenced to two and one-half years at hard labor with credit for time served. Additionally, the defendant's probation on the DWI conviction was revoked, but his 60 day sentence was imposed concurrently with the sentence imposed for the present conviction. The trial court denied an oral motion for reconsideration of sentence. The defendant now argues on appeal that the evidence was not sufficient to support the verdict, particularly that the evidence failed to show he did not act in self-defense. The defendant also argues that his sentence of two and one-half years is excessive and based on inadequate consideration of the factors set forth in La. C.Cr.P. art. 894.1

DISCUSSION

Sufficiency of the Evidence:
A sufficiency of the evidence claim requires the reviewing court to determine whether a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable *213 to the prosecution, could reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily harm. La. R.S. 14:34.1. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19. A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
The defendant concedes that he committed the battery. However, he contends the evidence fails to show that he did not act in self-defense. It is the defendant's contention that the victim, Ronnie Robinson, was armed with an axe handle and that he used necessary force to fend off Robinson's attack.
Although the defendant testified that both Bobby Atkins and Robinson were armed with weapons, an old shotgun and an axe handle respectively, this claim is not corroborated by other evidence. Brenda Atkins, Bobby Atkins, Ronnie Robinson, and Lorenzo Atkins all testified that neither Bobby nor Ronnie were armed when they went to check on Brenda. The testimony established that the defendant armed himself with the slingblade when he saw Bobby and Robinson approaching. Bobby testified that she asked the defendant why he was carrying the slingblade and that he told her it was none of her business. Lorenzo Atkins testified that the defendant looked upset when he was looking for Brenda and that he saw the defendant knock Brenda to the ground. The defendant denied knocking Brenda to the ground and claimed that she fell. However, the defendant did admit that he hit Brenda on the chin once they were home. Testimony also established that the defendant was cursing during the incident. The defendant admitted that he was angry enough to rip the electric meter from the house as he left the premises after cutting Robinson.
The jury determined not to believe the defendant's self-defense claim, and we must accord great deference to the jury's rejection of the defendant's testimony. The defendant did not pick up a weapon at the last minute when attacked. Instead, he armed himself when he saw Bobby Atkins and Ronnie Robinson approaching his house. The defendant was already angry and violent, as evidenced by his treatment of Brenda Atkins. It appears that the defendant attacked Robinson in an act of aggression and without justification. We find that the evidence, viewed in the light most favorable to the prosecution, supports the jury's verdict and proves beyond a reasonable doubt that the defendant did not act in self-defense.

Excessiveness of the Sentence:
The test imposed by the reviewing court in determining the excessiveness *214 of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345. The crime of second degree battery carries a term of imprisonment, with or without hard labor, for not more than five years. La. R.S. 14:34.1.
The defendant argues that the record contains an insufficient factual basis or explanation for the sentence of two and one-half years at hard labor imposed by the trial court. The defendant asserts that the record does not show what considerations the trial court took into account in fashioning the sentence.
Contrary to the defendants assertion, we find that the record contains an ample showing of the considerations taken into account by the trial court in imposing the sentence. The trial court reviewed the pre-sentencing investigation report and the facts of the case. The trial court also reviewed the defendant's criminal history, which included a simple robbery conviction which was reduced by plea agreement from a first degree robbery charge. The defendant explained that the robbery conviction resulted from a gambling problem and that no weapon was used in the commission of the crime. The trial court found the defendant to have a history of criminal activity, including the simple robbery and DWI convictions, which the trial court described as serious offenses. The trial court also noted that the defendant used actual force in the commission of the instant crime. In mitigation, the trial court considered that the defendant was 40 years old, the father of three children, and a high school graduate who served three years in the military. The defendant's past employment was also noted.
After consideration of the factors stated above, the trial court imposed a mid-range sentence of two and one-half years with credit for time served and directed the sentence to run concurrently with the DWI sentence for which probation had been revoked. The trial court did not believe that probation or a lesser sentence would be appropriate in light of the seriousness of the offense.
We find the reasons articulated by the trial court adequate to support the mid-range sentence. The defendant acted without justification and caused substantial injury to the victim. This sentence does not shock the sense of justice. We find no manifest abuse of the trial court's wide discretion in the imposition of the two and one-half year sentence.

Error Patent:
Our error patent review disclosed that the trial court informed the defendant that the prescriptive period for post-conviction relief is three years. The prescriptive period is two years. La.C.Cr.P. art. 930.8, as amended by Acts 1999, No. 1262, § 1. We direct the trial court to send appropriate written notice to the defendant within 30 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. *215 State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).

CONCLUSION
Upon finding no merit in the defendants assignments of error regarding the sufficiency of the evidence and the excessiveness of the sentence, we affirm the defendant's conviction and sentence. We also direct the trial court to provide the defendant written notice within 30 days of the rendition of this opinion of the two year prescriptive period for filing for post-conviction relief and to file proof of receipt of the notice in the record.
AFFIRMED.