Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,122-KA
No. 54,123-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOHN E. GILCREASE                           Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 367,300

Honorable Katherine Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Sherry Watters

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

NANCY BERGER-SCHNEIDER
RICHARD S. FEINBERG
Assistant District Attorneys

* * * * *

Before MOORE, STEPHENS, and THOMPSON, JJ.

**MOORE, C.J.**

The defendant, John E. Gilcrease, entered guilty pleas for second degree battery, a violation of La. R.S. 14:34.1, and obstruction of justice, a violation of La. R.S. 130.1, as well as several misdemeanors, including false imprisonment and 14 counts of violation of a protective order. For the felony convictions, the court sentenced Gilcrease to 6 years at hard labor for his second-degree battery conviction and 10 years at hard labor for his obstruction of justice conviction. The court ordered the felony sentences to run concurrently with the misdemeanor sentences. Gilcrease now appeals both felony sentences, alleging that the court abused its discretion by imposing unconstitutionally excessive sentences for each.

For the following reasons, we affirm in part, vacate in part, and remand for resentencing.

## FACTS

Shortly after midnight on May 28, 2019, Caddo Parish Sheriff's Deputy Joshua Grimes was dispatched to Willis Knighton South to investigate a battery committed just hours earlier at a Keithville, Louisiana residence on May 27, 2019. The victim of the battery, Connie Cliburn, told Grimes that her boyfriend, John Gilcrease, with whom she had lived for one year, had beaten her several times during the previous day. Gilcrease was not present at the hospital.[1]

---

[1] Gilcrease claims Ms. Cliburn is his wife, as he did with previous victims. Since Ms. Cliburn refers to Gilcrease as her boyfriend and is so reported according to Deputy Grimes's report, we will do the same.

Ms. Cliburn said the beatings began around noon the day before in the travel trailer where they have resided for the past year.[2]  The dispute erupted over a marriage license and continued during the day until 10:00 p.m. when Ms. Cliburn escaped and ran to her sister's house on foot.

Ms. Cliburn said that Gilcrease walked toward her and hit her in the nose with the palm of his hand.  Then, when she tried to scream, he shoved socks in her mouth and choked her with his left hand.  He told her he would stop if she would be quiet.  He locked the door, preventing her from leaving.  Each time she tried to move toward the door, he shoved her to the floor.

Gilcrease told her to get the gun and shoot him so he could kill her.  When she refused, he pinned her down on the bed with his knees on her arms and tied a neck tie around her neck.  He put socks in her mouth and covered her mouth with his hand while pinching her nostrils shut.  He told her he was going to kill her and then kill himself.  She said she blacked out.  When she came to, he was standing by the front door, and he told her she was not leaving.  He said he did not trust her because she was going to call the cops, and he would go to jail.

She convinced him to let her take a shower, but when she was getting in the shower, he repeatedly slammed the right side of her face into the wall.  After the shower, she asked if she could check on her dog staying at his parents' house.  She said that when they went into the house, John and his father began arguing.  John's father told John he needed to leave.  When John went back to the trailer, Ms. Cliburn seized the opportunity to flee on

_____

[2] The travel trailer was parked in the driveway next to Gilcrease's parents' home.

2

foot to her sister's house located approximately a mile away. When she arrived there, her sister drove her to the hospital.

Deputy Grimes noted in his report that the victim's right eye was black and almost completely swollen shut. Her nose was red and swollen as well as her lips. She had several scratches on her face and around her neck. She had purple and black bruising on both of her arms.

Gilcrease was subsequently arrested at the Keith Road address. He denied any physical altercation with Ms. Cliburn. He said that he fell down from drinking. Grimes said Gilcrease had scratches on his face and neck, which Gilcrease said resulted from falling down. Grimes informed him that he was being arrested for second degree battery and false imprisonment. Grimes obtained Gilcrease's consent to go in the trailer where he found blood on the floor and on a pillow on the bed. He also found a necktie on the back of a chair seat.

Gilcrease was booked on charges of second degree battery, a violation of La. R.S. 14:34.1 and false imprisonment, a violation of La. R.S. 14:46.

On June 12, 2019, Judge Katherine Dorroh issued a protective order prohibiting Gilcrease from any contact with Ms. Cliburn, either personally, electronically, by telephone, in writing or through a third party. Gilcrease was returned to the CCC that afternoon after he telephoned the victim on her cell phone, ignoring the court's protective order. He continued to contact the victim on her cell phone some 68 times in the days following, even after Ms. Cliburn repeatedly told him he was not supposed to be calling her. Additionally, he wrote her several letters telling her to recant her statement to police about the incident, and he acknowledged in the same letter that he was asking her to lie about the battery for which he was charged. He told

her he could not live without her, and he would kill himself if she did not take his calls.

For her part, the victim told investigators she was terrified of Gilcrease.  She feared that he would get someone to harm her while he was in jail, or that he would harm her after he got out of jail.  She said he was manipulative and vindictive.

On September 1, 2020, the state filed an amended the bill of information charging second degree battery and false imprisonment, and violation of a protective order (14 counts) (#372733), an offense defined by La. R.S. 14:79.  A second bill was filed charging Gilcrease of obstruction of justice (#370505), in violation of La. R.S. 14:130.1, namely, by "tampering with evidence with specific intent of distorting the results of any criminal investigation."

Trial was set to commence on September 14, 2020.  That morning, Gilcrease unsuccessfully tried to resurrect a rescinded plea offer from the state that he had previously rejected.  Faced with the prospect of a trial, Gilcrease ultimately elected to plead guilty to the charges with no agreement, ostensibly to save Ms. Cliburn from the stress of testifying.

The court informed Gilcrease of the sentencing ranges for each offense to which he was pleading guilty, and properly *Boykinized* Gilcrease before accepting his guilty pleas.

As noted above, the court subsequently sentenced Gilcrease to six years at hard labor for the second degree battery conviction and 10 years at hard labor for the obstruction of justice conviction, concurrent with each other and with the misdemeanor sentences.

4

This appeal followed, wherein Gilcrease contends the court abused its discretion by imposing excessive sentences for each of the felony convictions.

## DISCUSSION

Appellate courts utilize a two-pronged analysis in reviewing a sentence to determine whether it is excessive. First, the record must show that the trial court considered the factors in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The goal of La. C. Cr. P. art. 894.1 is for the court to articulate the factual basis for the sentence, and not simply mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos,* 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

In the second prong of the analysis, the court determines whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A grossly disproportionate sentence shocks the sense of justice when the crime and punishment are viewed in light of the harm done to society. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

The trial court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Diaz*, 46,750 (La. App. 2 Cir. 12/14/11), 81 So. 3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, *supra*; *State v. Free*, 46,894 (La. App. 2 Cir. 1/25/12), 86 So. 3d 29.

### Six-year sentence for second degree battery

By his first assignment of error, Gilcrease alleges that the district court abused its discretion by imposing a six-year sentence which is constitutionally excessive under the circumstances of this offense and this offender. Gilcrease argues that the Louisiana Constitution affords greater protection in sentencing beyond the U.S. Constitution. It prohibits not only "cruel" and "unusual" punishment, but also prohibits the imposition of "excessive" punishment. La. Const. art. I, § 20. He argues that a sentence

6

may be excessive though neither cruel nor unusual. An excessive sentence occurs, he maintains, when the punishment is too harsh for certain conduct. Hence, a sentence may be excessive even if it is within the statutory limits if it is grossly disproportionate to the severity of the offense.

Furthermore, he argues, second degree battery requires that the offender intentionally inflict "serious bodily injury to the victim." Serious bodily injury is defined as bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty, or a substantial risk of death. Gilcrease argues that Ms. Cliburn's injuries consisted merely of a black eye, scratches to her arms and neck, and emotional trauma. On the spectrum of serious bodily injuries that support a second-degree battery charge, he argues, Ms. Cliburn's injuries were relatively minimal.

Finally, he argues that the broad sentencing range for second degree battery, i.e., "not more than eight years," indicates that the legislature intended to allow the sentencing judge to exercise his or her discretion according to the individual circumstances of the offense and the offender. Gilcrease contends that the sentence imposed on him is at the upper end of the spectrum, which is reserved for the most severe cases, whereas given the fact that the injuries Ms. Cliburn suffered were relatively minor, his punishment does not fit the offense and is therefore excessive. While the sentencing court found no mitigating circumstances, the sanity report indicated that Gilcrease is 46 years old, a high school graduate, and has two sons. He was employed as a machinist until he witnessed the gruesome

death of a coworker by a machine at work and from which he now suffers from posttraumatic stress syndrome.

Gilcrease cites several cases where defendants were convicted for second degree battery and their victims sustained injuries more severe than Ms. Cliburn, yet they received lesser sentences than his six-year sentence. However, we observe that in all but one of the cases, the maximum sentence for second degree battery was only 5 years at the time of the offense.

In *State v. Francisco,* 10-881 (La. App. 3 Cir. 2/2/11), 55 So. 3d 995, the defendant kicked and punched his girlfriend on the side of her head, dragged her by her hair, and slammed her into a door frame knocking her unconscious. She suffered bruising, swelling on one side of her face, arms and leg and a broken rib. The court imposed the maximum sentence of five years at hard labor for second degree battery. The sentence was affirmed on appeal based on the brutality of the offense and defendant's history of six felonies, including three felony arrests for domestic abuse battery, trespassing, aggravated battery, and violations of protective orders, and stalking.

Other cases Gilcrease cites are: *State v. Thomas*, 08-1280 (La. App. 3 Cir. 4/1/09), 7 So. 3d 802 (maximum 5-year sentence upheld where victim was stabbed twice in the neck and twice in the back with a knife); *State v. Hopkins*, 96-1063 (La. App. 3 Cir. 3/5/97), 692 So. 2d 538 (maximum 5-year sentence upheld where victim was beaten with a thick, tree branch); *State v. McBride*, 00-422 (La. App. 3 Cir. 11/15/00), 773 So. 2d 849, *writ denied*, 01-294 (La. 2/8/02), 807 So. 2d 858 (4-year, 10-month sentence with fine upheld where weapon was used to cut victim's throat, damaging blood vessels).

8

Gilcrease contrasts these maximum or nearly maximum sentence cases with two Second Circuit cases in which the defendants received lesser sentences. In *State v. Tisby*, 33,591 (La. App. 2 Cir. 6/21/00), 764 So. 2d 209, *writ denied*, 00-2236 (La. 6/1/01), 793 So. 2d 181, the defendant was charged with aggravated battery for swinging a "sling blade" (aka a Kaiser or K-blade) at the victim and cutting his face after the victim had intervened in a dispute between the defendant and his girlfriend at a barbeque. The jury returned a responsive verdict of second-degree battery; the defendant was sentenced to 2½ years at hard labor – half the maximum sentence. In *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764, this court affirmed a near-maximum sentence of 4½ years at hard labor for striking his girlfriend in the face during a dispute. The blow fractured her face and broke her nose resulting in the loss of one eye and permanent disfigurement. The defendant had three prior felony convictions.

In this case, the police reports indicate that the defendant tormented the defendant for several hours by beating and terrorizing her. He threatened to kill her and himself. He stuffed her mouth with socks so she could not cry for help, strangled her, pinned her down with his knees, and he pinched her nostrils shut so she could not breathe until she was unconscious. He slammed her head against the wall causing one side of her face to be swollen and she had a black eye swollen shut. He also struck her in the nose. She had to run a mile to her sister's house to escape. Her sister immediately took her to the hospital for treatment.

Regarding Gilcrease's argument that his sentence is excessive compared to other cases because Ms. Cliburn's injuries were relatively minimal, we note that the degree of injuries sustained by a victim of

domestic abuse is only one among several factors a court may consider while imposing a sentence, including the defendant's previous criminal behavior.

Gilcrease has a long history of beating women spanning back 20 years or more. Although there is a gap in his arrest record of nearly 10 years, we are also aware that many if not most instances of domestic abuse are never reported due to the victim's fear of retribution from the abuser. In addition to the several battery arrests or convictions in the early 2000s, Gilcrease had a recent arrest in 2017 for a similar domestic abuse incident involving another woman just two years prior to this incident. Trial was still pending in that matter when the instant sentences were imposed. The record shows that Gilcrease has received the benefit of lenient sentences and plea deals for his previous offenses, and yet, he has not changed his behavior.

Given these circumstances, we conclude that the sentencing court properly exercised its broad discretion by imposing a sentence that reflects the seriousness of the offense and the degree of culpability of the defendant. Therefore, we conclude that the six-year sentence at hard labor imposed for this offense was neither excessive, cruel and unusual punishment, nor did the sentence constitute an abuse of discretion by the sentencing court.

This assignment is without merit.

### Ten-year sentence for obstruction of justice

By this assignment of error, the defendant alleges that the district court abused its discretion by imposing a 10-year sentence which is more than the statutory maximum for this offense and is constitutionally excessive under the circumstances of this offense and this offender. However, he also maintains that a review of the record discloses an error patent in that "the

State's statement of fact does not match the bill of information and does not provide a legal basis for a valid plea." Hence, the 10-year sentence is invalid, he argues, since a valid sentence for him must rest upon a valid and sufficient statute, indictment and guilty plea. La. C. Cr. P. art. 872.

Gilcrease maintains that the facts alleged in the bill of information do not fit the recitation of facts by the ADA to which he pled guilty and which formed the factual basis of his guilty plea. Specifically, he alleges that the bill charges facts that would violate subparagraph (A)(1) of the statute, but the facts the ADA recited at the guilty plea support a violation of subparagraph (A)(2). The bill of information reads:

\*\*\*

. . .the STATE OF LOUISIANA charges that on or about June 12, 2019, at and in the Parish, District and State aforesaid

JOHN E. GILCREASE

Committed the offense of

**R.S. 14:130.1-OBSTRUCTION OF JUSTICE**

In that HE

COUNT 1: committed the offense of OBSTRUCTION OF JUSTICE by *tampering with evidence with the specific intent of distorting the results of any criminal investigation.*

\*\*\*

(Emphasis supplied).

At the guilty plea colloquy, the judge asked the ADA to "state the facts" that formed the basis of the charge and to which the defendant was pleading guilty. The ADA responded:

> The state charges that on or about the date of June 12, 2019, in Caddo Parish, Louisiana, that the defendant, John E. Gilcrease, with a date of birth of 8/12/1972, committed the offense of violating Revised Statute 14:130.1, obstruction of

11

justice, in that he tampered with evidence or a witness with the specific intent of distorting the results of any criminal investigation, specifically by contacting Connie Cliburn, the witness against him in docket 367,300, which was at that time pending, and attempting to get her to recant or change her version of events all of which was contrary to the laws of the State of Louisiana and against the peace and dignity of the same and committed in Caddo Parish, Louisiana.

Gilcrease agreed to the facts as recited by the ADA.

Clearly, the language used Count 1 in the bill of information tracks a portion of subparagraph (A)(1) of the statute. However, the bill simply charges a violation of R.S. 14:130.1 – Obstruction of Justice. It does not charge a violation of subparagraph (A)(1) or (A)(2). The language in Count 1 simply alleges that Gilcrease "tampered with evidence with the specific intent of distorting the results of any criminal investigation."

The "result[] of the criminal investigation" in this case was the evidence leading to the instant charge of obstruction in the form of contacts by telephone and by mail wherein Gilcrease attempted to persuade, induce, or cajole Ms. Cliburn into changing her statements made to police that led to his criminal prosecution. Tamper simply means to "meddle" or "interfere" with. In our view, the acts recited by the ADA constitute "tampering with the evidence" with specific intent to distort the results of the criminal investigation.

Importantly, the record does not show that the defense requested a bill of particulars, nor did Gilcrease object to any problems with the bill prior to or at his guilty plea and sentencing proceedings. Gilcrease clearly knew what he was being charged with in the obstruction of justice charge, and he has not shown that he was misled or that his plea was involuntarily, unknowingly made or that he was prejudiced in any way.

12

Accordingly, this error patent claim is without merit.

***Sentence exceeds the statutory maximum***

Gilcrease argues that the 10-year sentence at hard labor imposed by the court for the obstruction of justice conviction exceeds the statutory maximum sentence of five years' imprisonment in this case. This argument has merit.

At the guilty plea hearing, the court reviewed the possible sentencing range or exposure for each crime to which Gilcrease was pleading guilty. The court noted that the penalty for second degree battery is a fine up to $2,000 or imprisonment, *with or without hard labor*, for not more than eight years, or both. For the crime of obstruction of justice, the court read aloud all three penalties in Section 130.1 Paragraph (B):

> (1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.

> (2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both.

> (3) When the obstruction of justice involves any other criminal proceeding, the offender shall be fined not more than ten thousand dollars, imprisoned for not more than five years, with or without hard labor, or both.

After she completed reading the third penalty provision for obstruction of justice, the judge told Gilcrease that the third provision would apply to his case.

Inexplicably, however, at sentencing the court imposed a 10-year hard labor sentence to run concurrently with the other sentences. Because second

13

degree battery *does not necessarily require a hard labor sentence,* Gilcrease must be sentenced under the third penalty provision of the statute, whereby the court may impose a fine up to $10,000, a term of imprisonment up to five years, with or without hard labor, or both.

We therefore vacate the 10-year concurrent sentence imposed for Gilcrease's conviction for obstruction of justice, and remand for resentencing.

Finally, inasmuch as we have vacated the illegal sentence imposed for obstruction of justice, defendant's argument that his 10-year sentence is excessive is now moot.

## CONCLUSION

For the foregoing reasons, we affirm Gilcrease's conviction and six-year sentence at hard labor for second degree battery. We affirm Gilcrease's conviction for obstruction of justice, but we vacate the concurrent 10-year sentence imposed for obstruction of justice, and we remand to the district court for resentencing on that conviction.

**AFFIRMED IN PART; SENTENCE VACATED, REMANDED FOR RESENTENCING.**

14