Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,039-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MELVIN BURKS                                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 364,189

Honorable Katherine C. Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

NANCY BERGER-SCHNEIDER
JASON W. WALTMAN
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before MOORE, PITMAN, and HUNTER, JJ.

**MOORE, C.J.**

The defendant, Melvin Burks, was convicted by a unanimous jury of possession of a firearm by a convicted felon, a violation defined by La. R.S. 14:95.1. The court sentenced Burks to 12 years at hard labor without benefit of probation, parole, or suspension of sentence. Burks now appeals, asserting that the sentence is unconstitutionally harsh given the facts and circumstances of the case as well as his personal history.

For the following reasons, we affirm the conviction and sentence.

## FACTS

On January 22, 2019, a shooting occurred in the front yard of a residence located at 3743 Hardy Street in Shreveport, Louisiana. Police were dispatched to the residence. When they arrived at the scene, they learned that 75-year-old Jessie Green suffered a gunshot wound to his shoulder. The shots were fired by Melvin Burks, age 34, who became enraged when Green expressed his opinion in a dispute between Burks's wife, Jennifer, and Green's granddaughter, Yukisha Robinson, over a food stamp card. After firing the shots, Burks fled the scene.

Green drove to the house in his pickup truck to help Yukisha move; he backed the truck up to the porch, and he was loading Yukisha's things into the truck bed. The two women were on the front porch arguing over Jennifer's refusal to return Yukisha's food stamp card and/or give her some of the food purchased with the nearly credit-depleted card. Jennifer's husband, Melvin Burks, heard the women arguing and came around from the back of the house to the porch area. Once there, he shouted at Yukisha, "You ain't gettin' no food stamps or nothin' else!" When Green suggested that Jennifer ought to return the food stamp card to Yukisha since the card

had Yukisha's name on it, or they should at least give her some of the food that Jennifer had purchased with Yukisha's card, Burks became infuriated, and, among other things, told Green to get off his property and that he had "something that will handle a 'n….' like you."

Green testified that Burks had one hand in his pocket covering what he believed was a pistol. Green told Yukisha, "let's go," and he told her she could call the police and get her stuff. As Green approached his truck, he turned toward Burks, who then fired his pistol two or three times, hitting Green once in the shoulder. The bullet impact knocked Green down. However, he got back to his truck and told Yukisha to get in the truck because they were leaving.

A neighbor who also witnessed the shooting from her driveway two doors down testified that she saw Green walking toward Burks, and that Burks fired his pistol when Green was about six steps away. Other witnesses testified they saw Green collapse from the gunshot while he was standing just inside the open driver's side door of his pickup. The neighbor also testified that it looked as though Burks was aiming his pistol at the ground. She saw Burks flee from the scene, running through or behind her backyard toward the next street.

Just before the police arrived, Green, Yukisha, and her two children drove to Green's house on Vine Street in Shreveport. From there, one of Green's other granddaughters drove him to the VA hospital. The VA stabilized Green and transferred him to LSU/Oschner's hospital. Ultimately, Green spent a couple of days in the hospital; doctors decided not to remove the projectile from Green's shoulder.

When the police unit arrived at the Hardy Street residence seconds after Green and Yukisha drove off, the front yard was filled with people. As other police units arrived, the witnesses were separated. Police obtained statements on the scene; however, some statements were made and recorded at the police station.

Officers learned that Green had already left to go to the hospital, and the shooter, Melvin Burks, had fled the scene. Some officers immediately began searching for Burks, who was found a short time later on a nearby street and detained. He was not armed. Burks was uncooperative in assisting officers attempting to locate the firearm that he had apparently discarded during his flight from the scene.

While Green was at the hospital, he gave police his consent to impound and search his pickup truck. Green informed police that he had a pistol in the truck for which he had a license to own. Green's pistol had not been fired.

Meanwhile, CSI officers at the scene of the shooting found no spent shell casings on the property. However, they did observe three bullet impact holes in the dirt in the front yard, one of which looked as though the projectile skipped off the ground. They retrieved one projectile from one of the holes. They also obtained video surveillance footage made by a home security camera system with exterior cameras on the house. The video did not show the actual shooting, but it did show a man (obviously Burks) apparently retrieving his gun from his truck before going to the front of the house.

Melvin Burks was arrested and charged by bill of information on February 25, 2019, for illegal use of weapons or dangerous instrumentalities

for firing a pistol three or more times during an argument in front of his house on January 22, 2019.

As the investigation unfolded, the initial bill was twice amended and charged Burks with two counts: aggravated second degree battery pursuant to La. R.S. 14:34.7, and possession of a firearm or carrying a concealed weapon by a convicted felon, a violation under La. R.S. 14:95.1.

Following trial, the jury could not reach a unanimous verdict on count one, aggravated second degree battery, for which the court declared a mistrial. On count two, possession of a firearm or carrying a concealed weapon by a convicted felon, the jury returned a unanimous guilty verdict.

Sentencing proceedings were held on August 5, 2020. The court first denied the defendant's motion for post-judgment verdict of acquittal which he filed immediately following trial. The trial judge commented that there was more than enough evidence to convict the defendant both for possession of a firearm by a convicted felon and for aggravated second degree battery, although the jury could not reach a unanimous verdict on the latter charge.

Counsel argued for a lenient sentence by pointing out that the defendant and Jennifer Burks had helped other people and that it had been a long time since he committed his first felony. They were married and had one child together. Additionally, the couple was raising Jennifer's other children. They adopted the child of a woman that came to live with them eight years earlier, but moved away, abandoning her four-year-old child, now twelve years old.

The current offense occurred on January 22, 2019. Burks was previously convicted of possession of a Schedule II substance on October 27, 2005. However, the 10-year cleansing period had not elapsed since the

4

end of his sentence because Burks was still on parole less than ten years prior to the instant offense.

The sentencing range for violation of 14:95.1 at the time of the offense was five to 20 years without benefit of probation, parole, or suspension of sentence and a fine of not less than $1,000 nor more than $5,000. After considering the factors listed in La. C. Cr. P. art. 894.1(A) and (B), the court imposed a 12-year sentence without benefit of probation, parole, or suspension of sentence with credit for time served. It also imposed a fine of $1,000, court costs, and $50 to the Public Defender's Office. The sentencing judge noted that the offense was not a crime of violence, and recommended to Burks that he participate in programs that may help with credit for "good time."

On September 4, 2020, Burks filed a motion to reconsider and vacate an unconstitutionally excessive sentence. Prior to a ruling on that motion, on September 23, 2020, Burks filed a motion to appeal which was granted on September 24, 2020. The trial court denied the motion to reconsider on October 21, 2020. (Pursuant to La. C. Cr. P. art. 916(3), the trial court retains jurisdiction to rule on a motion to reconsider after a motion for appeal is filed.).

**DISCUSSION**

Defendant's sole assignment of error is that his 12-year sentence at hard labor without benefits is constitutionally excessive and harsh given the circumstances of the case and his personal history. Specifically, counsel argues that sentence is unconstitutionally harsh considering the circumstances of the shooting incident. The lengthy sentence, counsel argues, is unnecessarily and needlessly harsh and will cause great hardship

5

for Melvin and his family. Although Melvin's parole term for a drug offense had not run the full ten-year cleansing period, the felony offense on which the charge was based actually occurred a very long time ago, i.e., in 2005. Melvin and his wife have shown kindness to many people in need by housing them. Melvin has cared for children in the home who needed him.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. West*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. West*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. West, supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v.*

6

*Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Meadows*, *supra*. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 13-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764.

In this case, Melvin Burks was convicted by a unanimous jury for possession of a firearm by a convicted felon, a violation under La. R.S. 14:95.1. This offense carries a sentencing range of imprisonment at hard labor for not less than five or more than 20 years without the benefit of probation, parole, or suspension of sentence, and a fine of not less than $1,000 nor more than $5,000.

Prior to imposing sentence, the court considered the three factors listed in La. C. Cr. P. art. 894.1(A), which state that a sentence of

7

imprisonment should be imposed if any one of the factors are present. In this case, the court noted that factors (2) and (3) were present, namely, that the defendant was in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution, and that a lesser sentence would deprecate the seriousness of the defendant's crime.

Additionally, the court considered the mitigating and aggravating factors listed in La. C. Cr. P. art. 894.1(B), and found that the following aggravating factors applied: (1) Burks's conduct during the commission of the offense exhibited deliberate cruelty to the victim, alluding to the fact that Green still has a bullet lodged in his shoulder that causes him trouble; (2) Burks should have known that Green was particularly vulnerable given his age; (5) Burks knowingly created a risk of death or great bodily harm to more than one person because there were other adults and children around; (6) he used actual violence in committing the offense; (9) the offense resulted in a significant permanent injury to the victim or his family; (10) Burks used a dangerous weapon; and, (21) Burks fled the scene after the commission of the offense.

Although the sentencing judge did not find the mitigating circumstances listed in the statute particularly applicable, she found that there were mitigating circumstances, namely, that Burks has a family and children that he cares for and that his last felony conviction was in 2005.

The record contains a police printout of Burks's prior arrests, which were mostly misdemeanors involving vehicle ownership regulations, e.g., violations of vehicle registration, license plates, and insurance requirements, and most of these arrests occurred between October 25, 2002, and January 4,

8

2006. The felony arrest that resulted in a conviction by guilty plea for possession of marijuana occurred on September 30, 2005. Burks was arrested again on May 18, 2015, for operating a motor vehicle with a suspended license, no insurance, and a license plate violation. Three months later he was arrested for the same vehicle violations plus possession of marijuana of less than 4 grams, for which he received a fine of $300 and a suspended sentence of 15 days followed by 6 months' probation. Finally, Burks was arrested on February 19, 2016, for several vehicular violations, including expired driver's license, running a red light, no license plates, no proof of insurance, stop sign violation.

Burks has no prior arrests or convictions for crimes of violence excluding this incident in which he was charged with aggravated second degree battery.

After review, we conclude that the trial court did not abuse its discretion by sentencing Burks to 12 years' imprisonment at hard labor without benefits, and imposing the statutorily required fine of $1,000 plus $50 to the Public Defender's Office. While the sentence is somewhat harsh, it does not shock the sense of justice when viewed in light of the aggravating circumstances involving this charge and conviction. Burks came to the front of the house armed with a loaded gun. He entered into the argument using hot-headed, foul language and threats against the 75-year old Green, who had simply and quite reasonably suggested that Burks's wife should return Yukisha's food stamp card since it was her card. After he insulted Green, Burks ordered him to leave the property. Green was in the process of doing so when Burks fired his pistol three times in his direction. Assuming, *arguendo*, that Burks fired the pistol into the ground not intending to shoot

9

Green but only scare him, his behavior was nevertheless reckless and malicious. Brandishing and firing a pistol in the midst of a heated argument not only creates a high risk of death or serious injury, it actually resulted in a serious injury to Green that required hospitalization. Surely these facts and circumstances were on the mind of the sentencing judge when she imposed this sentence. While Burks's behavior constituted some elements of the second degree aggravated battery offense for which the jury did not reach a unanimous verdict, a sentencing judge is not precluded from considering the full measure of the defendant's conduct as an aggravating factor in devising a sentence. *State v. Morgan*, 44,461 (La. App. 2 Cir. 8/19/09), 16 So. 3d 1289. *See also, State v. Washington,* 414 So. 2d 313 (La. 1982).

Accordingly, we conclude that the trial court did not abuse its discretion by imposing a 12-year sentence without benefit of probation, parole or suspension of sentence and fines in this case. Burks's reckless behavior during his possession of the firearm justifies the punishment imposed.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

10